# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GONZALES,<br><br>  Plaintiff,<br><br>  v.<br><br>A. PEREZ et. al.,<br><br>  Defendants.<br>_____ / | CASE NO. 1:03-cv-05363 LJO DLB PC<br><br>**PRETRIAL ORDER**<br><br>Jury Trial:  September 8, 2008, at 8:30 a.m.<br>              in Courtroom 4 (LJO) |

Plaintiff Michael Gonzales ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on plaintiff's second amended complaint, filed June 14, 2006, against defendants Perez, Riddle and Yrigollen ("defendants"). A telephonic trial confirmation hearing was held on May 16, 2008, and the Court now issues the instant Pretrial Order.

**I.   Jurisdiction and Venue**

The Court has subject matter jurisdiction over this federal civil rights action. 28 U.S.C. § 1331. Venue is proper because the conduct allegedly occurred in this judicial district.

**II.  Jury Trial**

Defendants request trial by jury. Plaintiff has not requested a jury nor bench trial.

///
///
///

1

III. **Facts**

    A.    <u>Undisputed Facts</u>[1]

    <u>Defendants' Undisputed Facts</u>

1. On April 23, 2001, correctional staff in Building 4B at Corcoran State Prison suspected that inmate Rowe had passed a razor to Gonzales.
2. Gonzales was removed from his cell and his cell was searched for the razor, with negative results.
3. Sergeant Perez and Officers Riddle and Yrigollen escorted Gonzales to 4B Visiting to process him through the metal detector.
4. Gonzales's metal restraints were replaced with plastic flex cuffs before he was to be walked through the metal detector.
5. Gonzales was escorted outside and positioned against the door or wall outside of 4B Visiting.
6. Gonzales's flex cuffs were removed and replaced by metal restraints.
7. Gonzales was placed on his knees and the leg irons were placed.
8. Gonzales was walked toward the 4B MTA's office and examined by MTA Maceil.
9. MTA Maceil noted a superficial abrasion to Gonzales's left knee, a 5 mm skin tear on the right wrist, and swollen left eyebrow with the skin intact. No other injuries were noted.
10. MTA Maceil cleaned the superficial abrasion on the left knee and skin tear on the right wrist with normal saline, covered the skin tear with a band-aid, and left the abrasion open to air.
11. The next morning, Gonzales was examined by MTA Huckaby, who noted a 0.5 cm raised area over the left eyebrow, with no bruising and no opening of the skin, a 1/8 inch lesion on the right wrist, that was closed and required no sutures, and superficial

---

[1] Plaintiff did not separately set forth his disputed and undisputed facts in his pre-trial statement. The facts as set forth in his pre-trial statement are contained in this Pre-Trial Order as Plaintiff's Disputed Facts. The court notes for the record that plaintiff was provided with the requirements for filing a pre-trial statement by the court in an order filed on February 4, 2008. (Doc. 92).

|   |   |   |
|---|---|---|
| | | abrasions on his knees and hands.  MTA Huckaby applied first-aid. |
| | 12. | Gonzales testified that his claimed injuries resolved within two weeks. |
| | B. | Disputed Facts |
| | | Defendants' Undisputed Facts |
| | 1. | Whether Perez deliberately banged Gonzales's head, causing the swollen eyebrow. |
| | 2. | Whether Perez intentionally cut Gonzales's right wrist. |
| | 3. | Whether Riddle and Yrigollen intentionally pushed down on Gonzales's shoulders with excessive force, causing him to scrape his left knee on the concrete. |
| | | Plaintiff's Disputed Facts |
| | 1. | On April 23, 2001, plaintiff was taken from his cell to the Visiting Room. |
| | 2. | Whether defendant Riddle removed plaintiff's shoes and had plaintiff put in chains. |
| | 3. | Whether defendant Riddle intentionally pulled plaintiff's plastic restraints tight, stopping the circulation to plaintiff's hands.  Whether plaintiff and defendant Riddle argued. |
| | 4. | Whether plaintiff was run through the metal detector. |
| | 5. | Whether defendant Perez became mad and ordered defendants Riddle and Yrigollen to take him outside and put him on the wall.  Once outside, whether defendant Perez hollered at plaintiff, pushed plaintiff on the wall, banged plaintiff with his elbow on the back of plaintiff's head several times, banging plaintiff's face on the wall, while defendants Yrigollen and Riddle held plaintiff down. |
| | 6. | Whether defendant Perez punched an instrument over plaintiff's hand. |
| | 7. | Whether defendant Perez ordered defendants Yrigollen and Riddle to put plaintiff on his knees, and whether they did, causing injury to plaintiff's knees. |
| | 8. | Whether plaintiff was placed in leg restraints.  Plaintiff was examined by MTA Maceil while being walked back to B Facility. |
| | 9. | Whether Plaintiff was later examined by MTA Firo.  Whether Plaintiff was then placed in a holding cell, and whether, by this time, plaintiff's eye was swollen, his ankles were cut up, and his hand was still cut and bleeding.  Plaintiff remained in the |

3

|   |     |   |
|---|-----|---|
| 1 |     | holding cell for the night. |
| 2 | 10. | Whether on April 24, 2001, plaintiff was take to Acute Care Hospital for x-rays. |
| 3 |     | Prior to this, plaintiff was examined by MTA Huckaby. |
| 4 | 11. | Whether plaintiff re-injured his ankle while being escorted back from the Acute Care |
| 5 |     | Hospital. |
| 6 | 12. | Whether plaintiff later told Lidia Susana Paredez and Christine Huerzos what |
| 7 |     | happened, and showed them his injuries. |
| 8 | 13. | Whether plaintiff was issued a 115 Rule Violation Report for the April 23, 2001 |
| 9 |     | incident. |

### C. Disputed Evidentiary Issues

1. Defendants anticipate that Gonzales may seek to introduce excerpts of trial testimony from his unrelated criminal case as evidence in this matter. Defendants object to the introduction of testimony from Gonzales's criminal trial on the basis that it is irrelevant to the issues in this case, it consists of inadmissible hearsay, and its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

2. Defendants will present evidence of Gonzales's felony convictions for purposes of impeachment.

3. Defendants object to any evidence submitted by Gonzales, including exhibits, based upon or containing inadmissible hearsay, or that is irrelevant, immaterial, or incompetent, or lacks authentication. Defendants specifically object to Gonzales submitting as evidence any affidavits or declarations because they are inadmissible hearsay. Defendants object to Gonzales offering any opinion testimony regarding statutory or regulatory construction, prison policies and procedures, or matters that call for medical or other expertise. Defendants reserve objection to specific testimony and specific exhibits until Defendants have had the opportunity to hear such testimony and examine such exhibits. At the time of trial, Defendants will

|   |   |   |
|---|---|---|
| 1 |   | move to preclude all facts, contentions, and issues as to evidence not properly |
| 2 |   | disclosed to Defendants during discovery. |
| 3 | D. | Special Factual Information |
| 4 |   | None. |

## IV. Relief Sought

Plaintiff seeks compensatory damages, punitive damages, injunctive relief, and attorney fees. However, plaintiff is proceeding pro se and is not entitled to attorney's fees. Defendants seek judgment in their favor, with an award of costs.

## V. Points of Law

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to

temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

///

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. Id. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Saucier v. Katz, 533 U.S. 194, 201 (2002). "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202 (citation omitted).

**VI. Abandoned Issues**

None.

**VII. Witnesses**

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses. NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(10).

///
///
///
///

A. <u>Plaintiff's Witnesses</u>[2]

1. Defendant Brian Lee Riddle
2. Defendant A. Perez
3. Defendant Yrigollen
4. Lidia Susana Paredez
5. Christine Huerzos
6. MTA Firo
7. MTA L. Huckaby
8. MTA Maceil[3]
9. Plaintiff Michael Gonzales, Inmate No. D81011

By order filed February 27, 2008, plaintiff was to notify the court, in writing, of the location of his unincarcerated witnesses. The court would then calculate the appropriate fees. Plaintiff has not submitted the locations of his unincarcerated witnesses. Plaintiff was reminded that <u>subpoenas will not be served upon an unincarcerated witness by the United States Marshal unless the money order is tendered to the court</u>. Because no statute authorizes the use of public funds for these expenses in civil cases, the tendering of witness fees and travel expenses is required even if the party was granted leave to proceed in forma pauperis.

Plaintiff was to submit the money orders to the court no later than **March 14, 2008.** To date, the court has not received money orders for the witness and transportation fees for plaintiff's unincarcerated witnesses.

B. <u>Defendants' Witnesses</u>

1. Defendant Perez
2. Defendant Riddle
3. Defendant Yrigollen

---

[2] Defendants Riddle, Perez, Yrigollen, M.T.A Huckaby, and M.T.A. Maceil are also listed as witnesses for the defendants. Counsel for the defendants indicated during the Telephonic Trial Confirmation Hearing that these witnesses would appear at trial and therefore plaintiff is not required to submit witness and transportation fees for them.

[3] Spelling corrected.

7

4. MTA Maceil
5. MTA Huckaby
6. MTA Lemos
7. R. Pear
8. P. Howell
9. R. Linfor
10. M. Miller
11. T. Verisimo
12. T. Fehlman
13. W. Hill
14. M. Perrien
15. Custodians of Gonzales' prison records, including central file and medical records.[4]

## VIII. Exhibits

The following is a list of documents or other exhibits that the parties expect to offer at trial. NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(11).

    A. <u>Plaintiff's Exhibits</u>

    (a) Transcript from case 01CM7414

    (b) X-rays dated April 24, 2001

    (c) Form 128G

    (d) 7219 Injury report prepared by MTA Maceil

    (e) 7219 Injury report prepared by MTA Firo

---

[4] The parties have agreed that these witnesses are permitted to authenticate documents via their declarations. Defendants have agreed to provide Plaintiff with the declarations of the custodians of records, with the authenticated documents, before the telephonic trial confirmation hearing scheduled for May 16, 2008.

8

|   |     |                                                                                     |
|---|-----|-------------------------------------------------------------------------------------|
| (f) | | 7219 Injury report prepared by MTA Huckaby |

(f)  7219 Injury report prepared by MTA Huckaby

(g)  Transcript testimony of Lidia Susana Paredez

(h)  Report Card

(I)  Transcript testimony of Sergeant Reebe

(j)  Madrid v. Gomez (no case citation provided)

(k)  Transcript testimony of Plaintiff's daughters and their mothers

B.   **Defendants' Exhibits**

(a)  Abstracts of Judgment

(b)  CDC 112-Chronological History

(c)  Legal Status Summary

(d)  Excerpts from Gonzales's deposition transcript

(e)  April 23, 2001-Medical Report of Injury or Unusual Occurrence by MTA Maceil

(f)  April 24, 2001-Medical Report of Injury or Unusual Occurrence by MTA Huckaby

(g)  April 24, 2001-Medical Report of Injury or Unusual Occurrence by MTA Lemos

(h)  January 15, 2002-Memo re: Gonzales admitting to lying during voice stress analyzer examination

(I)  January 22, 2002-Memo re: Gonzales admitting to lying during voice stress analyzer examination

(j)  Rule Violation Reports and Incident Report documents

(k)  April 5, 2001-Psychological Evaluation

(l)  Medical records from 2001

(m)  Gonzales' Second Amended Complaint

## IX   Discovery Documents

Defendants may introduce portions of plaintiff's deposition transcript.

## X.   Further Discovery or Motions

On April 28, 2008, May 16 and 19, 2008, plaintiff filed motions for further discovery.

Both parties are reminded of their continuing obligation to update all discovery responses previously made if that party becomes aware of new information or becomes aware that an answer

in a previous response is incomplete or incorrect. Fed. R. Civ. P. 26(e)(2). If either party intends to file motions in limine, the procedure and time requirements are set forth below.

**XI.    Stipulations**

Defendants stipulate that the parties need not introduce evidence to prove any undisputed fact as set forth above, in Defendants' Undisputed Facts.

**XII.   Amendments-Dismissals**

None.

**XIII.  Settlement Conference**

A settlement conference held on March 31, 2008 was unsuccessful.

**XIV.   Agreed Statements**

None.

**XV.    Separate Trial Of Issues**

Defendants request that there be a separate trial on punitive damages, if necessary.

**XVI.   Impartial Experts - Limitation Of Experts**

None.

**XVII.  Attorneys' Fees**

Plaintiff is proceeding pro se and is not entitled to attorney's fees. Defendants do not intend to seek attorney's fees and costs.

**XVIII. Trial Exhibits**

No special handling of trial exhibits requested.

**XIX.   Miscellaneous**

A.    <u>Further Trial Preparation</u>

1.    <u>Plaintiff's C-File and Medical Records</u>

Defendants are to bring to trial plaintiff's entire C-File and medical file for the time relevant to plaintiff's claims. Medical matters or documents unrelated to this claim are to be redacted.

2.    <u>Motions In Limine Hearing and Briefing Schedule</u>

Any party may file a motion in limine. The purpose of a motion in limine is to establish in advance of the trial that certain evidence should not be offered at trial. Although the Federal Rules

do not explicitly provide for the filing of motions in limine, the Court has the inherent power to hear and decide such motions as a function of its duty to expeditiously manage trials by eliminating evidence that is clearly inadmissible for any purpose. Luce v. United States, 469 U.S. 38, 41 n. 4 (1984); Jonasson v. Lutheran Child and Family Services, 115 F. 3d 436, 440 (7th Cir. 1997). The Court will grant a motion in limine, and thereby bar use of the evidence in question, only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. Id.; Hawthorne Partners v. AT & T Technologies, Inc., 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).

All motions in limine must be served on the other party, and filed with the Court, by **August 15, 2008**. Any motion in limine must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial.

Any opposition to a motion in limine must be served on the other party, and filed with the Court, by **August 27, 2008**.

If any party files a motion in limine, the Court will hear and decide such motions on the morning of trial.

Whether or not a party files a motion in limine, that party may still object to the introduction of evidence during the trial.

    3. <u>Other</u>

The parties are relieved of their obligation under Local Rule 16-285 to file trial briefs. The Court will prepare the verdict form, which the parties will have the opportunity to review on the morning of trial. If the parties wish to submit a proposed verdict form, they must do so on or before **August 15, 2008**.

Defendants shall file proposed jury instructions as provided in Local Rule 51-163 on or before **August 15, 2008**. Defendants are only required to file proposed jury instructions relating to the substantive law underlying this action. If plaintiff wishes to file proposed jury instructions, he must do so on or before **August 15, 2008**.

In selecting proposed instructions, the parties shall use Ninth Circuit Model Civil Jury Instructions to the extent possible. All jury instructions must be submitted in duplicate: One set will indicate which party proposes the instruction, with each instruction numbered or lettered, and

containing citation of supporting authority, and the customary legend, i.e., "Given, Given as Modified, or Refused," showing the Court's action, with regard to each instruction. One set will be an exact duplicate of the first, except it will not contain any identification of the party offering the instruction or supporting authority or the customary legend of the Court's disposition. Defendants shall provide the Court with a copy of their proposed jury instructions via e-mail at: dlborders@caed.uscourts.gov.

Proposed voir dire questions, if any, shall be filed on or before **August 15, 2008**. Local Rule 47-162.

The parties may serve and file a non-argumentative, brief statement of the case which is suitable for reading to the jury at the outset of jury selection on or before **August 15, 2008**. The Court will consider the parties' statements but will draft its own statement. The parties will be provided with the opportunity to review the Court's prepared statement on the morning of trial.

The original and two copies of all trial exhibits along with exhibit lists shall be submitted to Courtroom Deputy Irma Lira no later than **August 27, 2008**. All of plaintiff's exhibits shall be pre-marked with the prefix "PX" and numbered sequentially beginning with 100 (e.g., PX-100, PX-101, etc.). All of defendants' exhibits shall be pre-marked with the prefix "DX" and numbered sequentially beginning with 200 (e.g., DX-200, DX 201, etc.).

XX. Objections to Pretrial Order

Any party may file and serve written objections to any of the provisions of this Order on or before July 14, 2008. Such objections shall specify the requested modifications, corrections, additions, or deletions. If amendments to this Order result from any written objections, an Amended Pretrial Order will issue.

///
///
///
///
///
///

***

<u>FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS FOR THE IMPOSITION OF SANCTIONS, INCLUDING POSSIBLE DISMISSAL OF THIS ACTION OR ENTRY OF DEFAULT, ON ANY AND ALL COUNSEL AS WELL AS ON ANY PARTY WHO CAUSES NON-COMPLIANCE WITH THIS ORDER</u>.

IT IS SO ORDERED.

**Dated:** **June 29, 2008**              /s/ **Dennis L. Beck**
                                          UNITED STATES MAGISTRATE JUDGE